IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-CR-00573-IM |
| v. | **OPINION AND ORDER** |
| **STEVEN RICHARD COLE**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

This Opinion and Order addresses Defendant Steven Richard Cole's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF 46. Mr. Cole's motion is based on "extraordinary and compelling reasons" from his underlying health conditions that make him particularly vulnerable to coronavirus disease 2019 ("COVID-19"). ECF 46. For the reasons discussed below, the motion is granted.

## BACKGROUND

On November 13, 2018, Mr. Cole robbed a branch of Key Bank in Tigard, Oregon in violation of 18 U.S.C. § 2113(a). ECF 51, Ex. E at 7. After entering the bank, Mr. Cole approached a bank teller and handed her a note that read, "Give me All your Money Don't set any alarm off." *Id.* at 8. The teller handed Mr. Cole a total of $1,636.00 and he left the bank. *Id.*

PAGE 1 – OPINION AND ORDER

On November 21, 2018, Mr. Cole was arrested at his home for the robbery. *Id.* at 9. Following his arrest, Mr. Cole was released from custody to await his trial. ECF 4.

On June 12, 2019, Mr. Cole pled guilty to the single bank robbery charge. ECF 32. He was sentenced to twenty-two months of imprisonment, with three years of supervised release to follow. He was also ordered to pay $1,636.00 in restitution, and a special assessment fee of $100.00. ECF 43. Mr. Cole was permitted to voluntarily surrender. *Id.*

Pursuant to the Court's order, Mr. Cole voluntarily surrendered at the Federal Detention Center, SeaTac ("FDC SeaTac"), where he is currently housed. Mr. Cole is projected to be released on April 16, 2021. ECF 46 at 2. He has served a little over half of his sentence with roughly eight months left of incarceration.

Mr. Cole is fifty-one years old. He suffers from a history of substance abuse and depression. ECF 51, Ex. E at 14–15. He has a history of smoking. *Id.* at 13. While in custody, he was diagnosed with chronic Hepatitis-C. ECF 51, Ex. D at 37, 49. Further, Mr. Cole was born with a hemangioma, a severe facial birth defect. As a child, he underwent over fifty-three surgeries to reconstruct his cranial, jawline, and trachea. He was pronounced "dead" when his heart stopped beating for seven minutes at three-weeks old. To treat his hemangioma, Mr. Cole was in and out of the hospital every ninety days until he was twenty-two years old. ECF 51, Ex. E at 14.

On April 30, 2020, Mr. Cole filed a request for compassionate release with the Warden of FDC SeaTac. The request was denied on the same day. ECF 51, Ex. A. Mr. Cole filed the present motion on July 16, 2020. ECF 46. Since that time, coronavirus has now been detected at FDC SeaTac, where Mr. Cole is housed. *See COVID-19 Cases,* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed August 14, 2020).

Mr. Cole proposes a release plan that would place him at the Northwest Regional Reentry Center for the remainder of his sentence. He states, and the Government does not contest, that he is already eligible for such a placement under the prerelease eligibility expansion provided in the Second Chance Act, 18 U.S.C. § 3624(c). ECF 46 at 2. Mr. Cole hopes to participate in mental health treatment on this supervised release and has indicated potential employment with his former employer. *Id.* at 3; ECF 51, Ex. C. The United States Probation Office for the District of Oregon has approved his placement at the Northwest Regional Reentry Center if compassionate release is ordered by the Court. ECF 46 at 10.

**STANDARDS**

**A. Modifying a Term of Imprisonment for Compassionate Release**

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, under 18 U.S.C. § 3582(c)(1)(A), courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant" reduction, or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Director of the Federal Bureau of Prisons ("BOP") could move a district court under 18 U.S.C. § 3582(c)(1)(A) for the compassionate release of a federal prisoner. The First Step Act of 2018 ("FSA") amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. *See* First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A) now authorizes a district court to reduce a defendant's sentence either (1) upon motion by the Director of the BOP or (2) upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."
18 U.S.C. § 3582(c)(1)(A).

Where this exhaustion requirement is met and a defendant is seeking a sentence reduction
under § 3582(c)(1)(A)(i), a court may grant the motion if it finds that: (1) "extraordinary and
compelling reasons warrant such a reduction"; and (2) "such a reduction is consistent with
applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).
If the court finds that both criteria have been met, the court must consider the factors set forth in
18 U.S.C. § 3553(a) to the extent that they are applicable. *Id.*

The defendant bears the burden of proof to show that he is eligible for a sentence
reduction and that the reduction is appropriate. 18 U.S.C. § 3582(c)(1)(A); *see also United
States v. Holden*, 3:13-cr-00444-BR, 2020 WL 1673440, at *3 (D. Or. Apr. 6, 2020); *United
States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020). Even if there are extraordinary
and compelling reasons, the grant of a motion for compassionate release is in the sentencing
court's discretion. *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020); *United
States v. Webster*¸ No. 3:91cr138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020).

## DISCUSSION

### A. Exhaustion

The Government does not contest Mr. Cole's failure to exhaust and therefore this Court
considers that argument waived. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)
(holding that the compassionate release exhaustion requirement is a non-jurisdictional claims-
processing rule that can be waived); *see also United States v. Jackson*, 2020 WL 3889701, at *2
(D. Or. July 9, 2020) (finding the government had waived an exhaustion argument under 18
U.S.C. § 3582 where the government did not raise the issue). This Court will next address the
merits of Mr. Cole's motion.

**B. Extraordinary and Compelling Reasons**

Mr. Cole argues that his medical vulnerabilities constitute extraordinary and compelling reasons for a sentence reduction in light of the risks posed by the COVID-19 pandemic for prison populations. ECF 46 at 4–7. In response, the Government argues that Mr. Cole is not at any significantly increased risk for severe illness should he contract COVID-19. ECF 52 at 2–7. The Government also contends that Mr. Cole's health conditions can be managed in prison, and that Mr. Cole has not served a significant enough portion of his sentence to justify early release. *Id.* at 7–10.

Congress never defined the phrase "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 28 U.S.C. § 994(t). Congress directed the Sentencing Commission to define the phrase. *Id.* The Commission did so prior to the passage of the First Step Act but has not since updated the policy statement. *See* U.S.S.G. § 1B1.13 cmt. n.1. In subsections (A)–(D) of an Application Note to U.S.S.G. § 1B1.13, the Commission enumerated four "reasons" that qualify as "extraordinary and compelling": (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the

defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. *Id.*

This Court acknowledges the exceptional nature of the COVID-19 global health crisis that has taken the lives of more than 165,000 people in the United States alone. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from COVID-19, that condition may reasonably be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, although that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally id.* at cmt. n.1(A)(ii)(1).

Even so, most district courts that have considered the issue have held that the "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)(i)." *Id.* at 582 (M.D.N.C. 2019); *see also, e.g., United States v. Dana*, 3:17-cr-148-SI, 2020 WL 3056791, at *2 (D. Or. June 9, 2020) (finding that U.S.S.G. § 1B1.13 as currently written "does not constrain the Court's ability to find extraordinary and compelling reasons."); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("[T]he most natural reading of the amended § 3582(c) . . . is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."); *United States v. Fox*, 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[D]eference to the BOP no longer makes sense now that the First Step Act has reduced the

BOP's role."); *United States v. Redd*, 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) ("[T]he Court concludes . . . there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Young*, 2:00-cr-00002-1, 2020 WL 1047815, at *2 (M.D. Tenn. Mar. 4, 2020) ("The government also concedes that, because the Sentencing Commission's policy statement 'has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies,' the existing policy statement, while providing 'helpful guidance,' 'is not ultimately conclusive given the statutory change.'") (citations omitted).

This Court agrees with the reasoning of a majority of district courts and finds that the policy statement may provide "helpful guidance" but does not limit the Court's independent assessment of whether "extraordinary and compelling reasons" exist under section 3582(c)(1)(A)(i). *See Beck*, 425 F. Supp. 3d at 582; *Fox*, 2019 WL 3046086, at *3 ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance . . . [but] is not ultimately conclusive given the statutory change.").

Mr. Cole asserts that the COVID-19 pandemic, combined with his particular vulnerability to serious complications from COVID-19, constitutes "extraordinary and compelling reasons" for his release. ECF 46 at 4–9. In support of his motion, Mr. Cole notes the unique status of prisons during the COVID-19 pandemic as "tinderboxes for infectious disease." ECF 46 at 5 (quoting *United States v. Rodriguez*, 2:03-cr-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020)). Mr. Cole argues he is especially susceptible to a severe case of COVID-19 were he to get infected. Through the expert opinion of Dr. Thomas McNalley, Mr. Cole has presented evidence that he remains at risk for severe complications from COVID-19, ranging from "serious

long-term pulmonary compromise with prolonged hospitalization, including respiratory failure, shock, acute respiratory distress syndrome (ARDS), and cardiac arrhythmia to death." ECF 51, Ex. B at 2.

Mr. Cole has presented evidence of the unique challenges posed by his medical history with a congenital hemangioma. Due to the significant amount of surgery that Mr. Cole underwent involving his face and neck, Dr. McNalley believes that scar tissue has likely developed in that area, which could cause "changes in [Mr. Cole's] respiratory mechanics." ECF 51, Ex. B at 3. This raises significant concern, since "the primary cause of morbidity and mortality in COVID-19 is respiratory." *Id.*

Moreover, Dr. McNalley notes that Mr. Cole's chronic Hepatitis-C increases "the risk of death threefold" in patients who contract COVID-19. ECF 51, Ex. B at 3. The Center for Disease Control also lists liver disease, a category encompassing chronic Hepatitis-C, as a condition that may increase the risk of severe illness from COVID-19. *Center for Disease Control and Prevention, Corona Virus Disease 2019 (COVID 19), People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 14, 2020).

While Mr. Cole's underlying conditions may not in and of themselves constitute extraordinary and compelling reasons for a reduced sentence, this Court finds a cumulation of factors do. The combined circumstances of Mr. Cole's heightened risk of serious infection, the existence of active COVID-19 cases at FDC SeaTac amongst inmates, the short remainder of his sentence, and Mr. Cole's ostensible eligibility to be placed at the Northwest Regional Reentry Center under 18 U.S.C. § 3624(c) constitute extraordinary and compelling reasons for his early release to a halfway house. Mr. Cole has met his burden.

PAGE 8 – OPINION AND ORDER

### C. Safety of Other Persons and the Community

Further, this Court finds that Mr. Cole "is not a danger to the safety of any other person or the community." *See* U.S.S.G. § 1B1.13(2).[1] Other than his conviction for unarmed bank robbery, Mr. Cole has been convicted largely of non-violent misdemeanor offenses. All of which are more than ten years old. He does, however, have one prior misdemeanor assault conviction from 2002. ECF 51, Ex. E at 10–12. He also has a single felony conviction for identify theft in 2007 for attempting to use the personal identification of another person. *Id.* at 12. Due to the nature of these offenses, and the amount of time that has transpired since they occurred, these convictions did not enhance Mr. Cole's federal sentence. *Id.*

Defendant's assault conviction is now almost twenty years old, and nothing else in the record suggests Mr. Cole presents a danger to the community. Indeed, this comports with prior assessments of Mr. Cole's criminal history. Following his arrest, the court found that Mr. Cole met the section 3142(g) standard by granting pretrial release. ECF 4. He was released at his first appearance and remained under the supervision of the Pretrial Services Office until his voluntary surrender to the BOP, with the exception of several weeks in custody for a state case that was resolved in an acquittal.[2] Throughout his time on pretrial release and voluntary surrender, Mr.

---

[1] The Commission's policy statement, which provides helpful guidance, provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

[2] On December 3, 2018, while on pretrial release, Mr. Cole was arrested for simple assault. As a result, a pretrial violation warrant was issued. On January 15, 2019, Mr. Cole was acquitted of his assault charges by a jury. On January 17, 2019, he appeared before Judge John V. Acosta, who found that Mr. Cole was not in violation of his pretrial release conditions based on his acquittal. Mr. Cole was subsequently released again on conditions to await trial. ECF 51, Ex. E at 8.

Cole remained in compliance with all of the conditions of his release. ECF 51, Ex. E at 8; ECF 46 at 9.

Mr. Cole's underlying offense did not involve a firearm or even an express threat of death enhancement. Mr. Cole subsequently accepted full responsibility for his actions in his guilty plea. ECF 51, Ex. E at 9–10. Mr. Cole has exhibited rehabilitation. He has had no disciplinary issues or violations while in prison. During his pretrial release he engaged in mental health treatment. *Id.* at 14–15. He hopes to continue this treatment while at the Northwest Regional Reentry Center. ECF 46 at 3. He proposes to stay at the reentry center for the remainder of his eight months under the continued supervision of the United States Probation Office. Based on the record before this Court, this Court finds that Mr. Cole does not present a danger to other persons or the community.

### D. Section 3553(a) Factors

Finally, the factors set forth in 18 U.S.C. § 3553(a) also favor compassionate release. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

For many of the aforementioned reasons pertaining to the section 3142(g) factors, this Court finds that the applicable section 3553(a) factors weigh in favor of compassionate release. Mr. Cole's prior violations do not suggest he would present a danger to the community, particularly if released to a reentry center. Additionally, this Court notes that Mr. Cole has already served over half of his sentence in prison, with only eight months remaining. Finally, Mr.

Cole contends, and the Government does not contest, that he is not asking for more than the functional equivalent of the sentence already imposed, as he is asking to transition to the equivalent of community corrections. These considerations weigh in favor of compassionate release. Furthermore, the Court will order that Mr. Cole reside at a residential reentry center for the remainder of his sentence and be monitored by radio frequency monitoring or GPS for the remainder of his sentence or until further court order. Mr. Cole is advised that in the event that he violates any conditions of supervision, this Court is likely to return Mr. Cole to custody to serve the remainder of his sentence.

<h2 style="text-align:center">CONCLUSION</h2>

The Court GRANTS Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Cole's sentence, Mr. Cole does not appear to pose a danger to any other person or the community, and that the section 3553(a) factors support a reduction. An Amended Judgment will be issued.

**IT IS SO ORDERED**.

DATED this 15th day of August 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge